UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ALI ABDULLAH-SADIQ,

                  Plaintiff,

  -against-

                  **MEMORANDUM AND ORDER**
                  16-CV-7140 (AMD) (LB)

P.O. CHARLIE VENTICINQUE,

                  Defendant.
-----------------------------------------------------------------X

ANN M. DONNELLY, District Judge:

On December 23, 2016, the plaintiff filed this *pro se* Section 1983 action against Police Officer Charlie Venticinque, asserting claims of false arrest and malicious prosecution. (ECF No. 1.)[1] On April 23, 2018, the defendant moved for summary judgment on all claims against him. (ECF No. 53.) On April 24, 2018, the plaintiff opposed the motion. (ECF No. 55.) For the reasons that follow, the defendant's motion is granted.

## BACKGROUND

On September 13, 2015, the plaintiff sent a series of text messages to Ferrin Francis, a pastor of the church where the plaintiff attended services. (Def.'s 56.1, ECF No. 52 ¶ 1.)[2] The plaintiff's messages included the following statements:

> While I am learning, what it means to love my enemy, and I am not fully there; I don't like you, nor the wickedness that you do, from the pulpit… Seeing brother Green towering over you yesterday… you don't appear such a big man after all… You keep provoking, with your attacks from the PULPIT; you keep telling your one-sided story from the PULPIT, and this can leave two wives, without

---

[1] The plaintiff filed his complaint against the City of New York, the New York Police Department (NYPD), the police department's former commissioner, Bill Bratton, the Queens County District Attorney, Richard Brown, three church officials and police officer Charlie Venticinque. (ECF No. 1.) On January 17, 2017, I dismissed the claims against all defendants except Officer Venticinque. (ECF No. 4.)

[2] The plaintiff did not file a Rule 56.1 counter-statement of facts, but expressed his disagreement with aspects of the defendant's Rule 56.1 statement in his opposition. (*See* ECF No. 55.)

1

> husbands, and children without a father... You better ask GOD TO STOP YOU.

(ECF No. 51-2) (emphasis in original.)

On September 17, 2015, Pastor Francis made a complaint to the NYPD's 105th Precinct about the plaintiff's messages. (ECF No. 52 ¶ 12.) On September 24, 2015, a police officer called the plaintiff and asked him to come to the precinct to discuss Pastor Francis' complaint. (ECF No. 52 ¶ 14; Pl.'s Dep., ECF No. 51-3 at 28:11-29:4.) The plaintiff went to the precinct and met with Officer Venticinque. (ECF No. 52 ¶ 16; ECF No. 51-3 at 29:5-25, 47:2-5.) After the plaintiff confirmed that he sent the messages to Pastor Francis, Officer Venticinque arrested him for Aggravated Harassment in the Second Degree, at around 1:50 p.m. (ECF No. 52 ¶ 18; ECF No. 51-4.) The plaintiff was given a desk appearance ticket, and released at about 3:20 p.m. (ECF No. 52 ¶ 19; ECF No. 51-5; ECF No. 51-3 at 60:4-12.)

At his deposition, the plaintiff described the text messages that he sent to Pastor Francis:

> If I recall the text, I said to him that we're two men. We're men first before anything else. He goes on the pulpit. He abuses me from the pulpit. I'm not going to get up in church and stop him. So, I said to him by text, this thing is going to get into a push and shove, and wives could lose their husbands, and children; their father. I didn't say will. I said could. Mr. Jaffe, if you and I get into a shove, all it takes is for somebody's head to hit like that and somebody is going to go to die; someone is going to go to the hospital; somebody is going to be in jail. That's a real possibility... I'm older than him by twice his years. He's 6'2", 220 pounds and he fear a man that is 5'9", 150. I think he's worse than a woman.

(ECF No. 51-3 at 29:7-25.) The plaintiff explained that he sent the messages because he was offended by the religious opinions the pastor expressed during services. (*See id.* at 46:2-22.) When asked whether he intended to harm Pastor Francis, the plaintiff said, "I mean – you said harm. I'm saying we're going to have a physical confrontation. That's what I'm saying." (*Id.* at 47:13-15.)

2

The Queens County District Attorney's office charged the plaintiff with two counts of Aggravated Harassment in the Second Degree, pursuant to New York Penal Law §§ 240.30(1) and (2),[3] for sending threatening text messages to Pastor Francis. (ECF No. 52 ¶ 20; ECF No. 51-6.) The Criminal Court issued two orders of protection, ordering the plaintiff to stay away from Pastor Francis and refrain from communicating with him. (ECF No. 51-9.)[4] The plaintiff's criminal case was dismissed on April 25, 2016. (ECF No. 51-10.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). A fact is "material" for the purposes of summary judgment when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (internal citations omitted). Once the moving party has met its

---

[3] "A person is guilty of aggravated harassment in the second degree when: (1) With intent to harass another person, the actor... communicates, anonymously or otherwise, by telephone... a threat to cause physical harm to, or unlawful harm to the property of, such person, or a member of such person's same family or household... and the actor knows or reasonably should know that such communication will cause such person to reasonably fear harm to such person's physical safety or property, or to the physical safety or property of a member of such person's same family or household; or... (2) With intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication."

[4] The plaintiff acknowledged that he was served with the orders. (*See* ECF No. 51-3 at 62:20-25, Q: "Do you recall seeing an order of protection?" A: "Yes and that made me even more upset. That's one of the reason why I said initially, I despise Mr. Francis.")

3

burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). Because the defendant is moving for summary judgment, I draw all reasonable inferences in the plaintiff's favor. In addition, because the plaintiff is proceeding *pro se*, I construe his filings liberally, and "interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citations omitted); *see also Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).

## DISCUSSION

The facts here are largely undisputed. The plaintiff admits that he sent text messages to Pastor Francis, including one which read, "You keep provoking, with your attacks from the PULPIT… and this can leave two wives, without husbands, and children without a father…" (*See* ECF No. 51-2.) He argues, however, that Officer Venticinque should not have arrested him for sending the messages, and that the officer violated his Fourth Amendment rights, subjecting him to "unlawful and false imprisonment" "on the basis of a false statement" and without "enough evidence." (ECF No. 1 at 4.)[5] The plaintiff also alleges that he was detained for "five to six hours." (*Id.*) I interpret the plaintiff's allegations as claims for false arrest and malicious

---

[5] The plaintiff, as he has in previous filings, devotes substantial energy leveling baseless accusations against his adversary. I remind the plaintiff once again that these insults are unhelpful and unnecessary, and could subject him to sanctions.

4

prosecution.

In order to state a false arrest or malicious prosecution claim pursuant to Section 1983, the plaintiff must establish that he was deprived of his Fourth Amendment rights and establish the elements of each claim. *See Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). For false arrest, the plaintiff must allege that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To establish a claim for malicious prosecution, the plaintiff must show: (1) the initiation of an action by the defendant against the plaintiff, (2) the defendant acted with malice, (3) the defendant did not have probable cause, and (4) the action ended in the plaintiff's favor. *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (citations omitted).

Probable cause "is a complete defense" to claims for false arrest and malicious prosecution. *Weyant*, 101 F.3d at 852; *Fulton*, 289 F.3d at 196. Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). In deciding whether an officer had probable cause to arrest, the court will "consider th[e] facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). Police officers are "entitled to rely on the allegations of fellow police officers" in deciding whether they have probable cause to arrest. *Martinez*, 202 F.3d at 634.

A court may decide the question of probable cause as a matter of law "if there is no

dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 Fed. App'x. 55, 56 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). Probable cause exists when an arresting officer learns of a crime from a potential victim, the victim signs a complaint under penalty of perjury, and there are no circumstances that raise doubts as to the victim's veracity. *See e.g., Miller v. City of New York*, 700 F. App'x 57, 58 (2d Cir. 2017); *Singer*, 63 F.3d at 119. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Wieder v. City of N.Y.*, 569 F. App'x 28, 29–30 (2d Cir. 2014) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)). Officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

As noted earlier, there is no real dispute about what led to the plaintiff's arrest. The plaintiff, angry about Pastor Francis' sermons, sent him a series of messages that included one in which he said wives would be left without their husbands and children would be left without their father. (*See* ECF No. 51-2.) Pastor Francis filed a complaint with the NYPD. After the plaintiff admitted sending the messages, Officer Venticinque arrested him for aggravated harassment based on those messages. Officer Venticinque reasonably interpreted the messages as threats to Pastor Francis, especially given the context of the surrounding messages, which ended with, "You better ask GOD TO STOP YOU." (*See id.*) Therefore, as a matter of law, Officer Venticinque had probable cause to arrest the plaintiff for aggravated harassment, and both the false arrest and malicious prosecution claims fail.[6] *See Bishop*, 518 Fed. App'x. at 56;

---

[6] Because I grant summary judgment to the defendant on plaintiff's false arrest and malicious prosecution claims, I do not address the issue of qualified immunity.

*Miller*, 700 F. App'x at 58; *see also Fulton,* 289 F.3d at 195-96 (finding probable cause to arrest Fulton for harassment in second degree where complainant made sworn, written complaint to officers accusing Fulton of threatening her).

Nor has the plaintiff shown that Officer Venticinque acted with malice or "improper motive" in arresting the plaintiff. *See Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996) (defining malice as the lack of probable cause or proof that the "the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served") (internal citations omitted). It does not matter that Officer Venticinque did not personally interview Pastor Francis. First, the officer was entitled to rely on information from his fellow police officers in deciding whether he had probable cause to arrest. *See Martinez,* 202 F.3d at 634. Moreover, the plaintiff admitted to Officer Venticinque that he sent Pastor Francis the text messages. (*See* ECF No. 51-3 at 29:5-25, 47:2-5.)

## CONCLUSION

The defendant had probable cause to arrest the plaintiff as a matter of law. The plaintiff's claims for false arrest and malicious prosecution must be dismissed. The defendants' motion for summary judgment is granted.

**SO ORDERED.**

                                                        s/Ann M. Donnelly
                                                  _____
                                                  Ann M. Donnelly
                                                  United States District Judge

Dated: Brooklyn, New York
        January 29, 2019